**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| CHICO SERVICE STATION, INC., <u>et al.</u>,<br><br>**Plaintiffs,**<br><br>v.<br><br>SOL PUERTO RICO LIMITED,<br><br>**Defendant.** | **Civil No.**: 09-1342 (JAF) |

## ANSWER TO COMPLAINT AND COUNTERCLAIM

TO THE HONORABLE COURT:

COMES NOW defendant Sol Puerto Rico Limited ("Sol"), through the undersigned attorneys, and very respectfully states, alleges, and prays:

**I. ANSWER TO COMPLAINT**

**As to the Nature of the Action and Jurisdiction.**

1. The allegations contained in the first sentence of paragraph 1 constitute conclusions of law to which no response is required. As to the remaining allegations of paragraph 1, Sol admits that the plaintiffs filed this complaint seeking injunctive relief against Sol.

2. The allegations contained in paragraph 2 constitute conclusions of law to which no response is required.

3. The allegations contained in paragraph 3 constitute conclusions of law to which no response is required.

**As to the Parties**

4. Sol admits the allegations contained in paragraph 4.

5. As to the first three sentences of paragraph 5, Sol admits that it is a corporation organized under the laws of England and is authorized to do business in Puerto Rico. It is the successor of The Shell Company (Puerto Rico) Limited following a Stock Purchase Agreement executed on June 13, 2006 and effective on August 31, 2006. Sol is authorized to use the "Shell" name and trademarks in Puerto Rico under a licensing agreement. As to the fourth sentence of paragraph 5, Sol admits that it was the owner of the underground storage tanks ("UST's") and related appurtenances which were installed at the former service station subject of this complaint, and which were removed in March of 2004. Sol affirmatively alleges that pursuant to Puerto Rico law, since 1978 it is precluded from operating any service stations. Sol admits the allegations contained in the fifth sentence of paragraph 5.

**As to the Statement of Facts.**

6. Sol admits that the UST's and related appurtenances installed in the former service station (later removed) were not part of the referred transaction. Sol denies the remaining allegations contained in paragraph 6.

7. Sol admits the allegations contained in paragraph 7.

8. Sol admits the allegations contained in paragraph 8. Sol affirmatively alleges that delineation of hydrocarbon impacts at the former service station has been accomplished. Also, the reports of testing and investigation performed at the site show that underground water beneath the former service station flows towards the north, and away from the creek.

9. Sol admits the allegations contained in paragraph 9.

10. Sol admits the allegations contained in paragraph 10.

11. Sol denies the allegations contained in the first sentence of paragraph 11. Sol affirmatively alleges that no gasoline products were delivered by Sol to the former service station since July of 2001, when the plaintiffs closed and ceased operation of the station, and that the

UST's at the former service station were removed in March of 2004. Sol admits the allegations contained in the second and third sentences of paragraph 11. Sol affirmatively alleges that it submitted a remediation plan to the Environmental Quality Board ("EQB"), which is currently pending approval, and that UST Regulations, Regulation No. 4362, and prior written agreements with Plaintiffs, require that the remediation plan be approved by the EQB before it is implemented.

12. Sol admits the allegations contained in paragraph 12.

13. Sol admits the allegations contained in the first sentence of paragraph 13. Sol denies the allegations contained in the second sentence of paragraph 13. As to the allegations contained in the third sentence of paragraph 13, Sol admits that it has submitted a remediation plan which is pending approval by the EQB. Sol affirmatively alleges that UST Regulations and prior written agreements with Plaintiffs require that the remediation plan be approved by the EQB before it is implemented.

14. Sol admits the allegations contained in paragraph 14. Sol affirmatively alleges that testing at the nearby creek is unnecessary because the reports of testing and investigation performed at the site show that groundwater beneath the former service station flows towards the north and away from the creek.

**As to the First Cause of Action.**

15. Sol incorporates the admissions, denials, and allegations contained in its responses to paragraphs 1 through 14, as if realleged herein.

16. Sol denies the allegations contained in paragraph 16.

17. Sol denies the allegations contained in paragraph 17.

18. Sol denies the allegations contained in paragraph 18.

19. Sol denies the allegations contained in paragraph 19.

20. Sol denies the allegations contained in paragraph 20.

21. As to the first sentence of paragraph 21, Sol admits that it owned the UST's and related appurtenances which were installed at the former service station and were removed in March of 2004. Sol denies that it owned the grease traps, septic tanks and hydraulic lift. Sol affirmatively alleges that pursuant to Puerto Rico law, it is precluded from operating any service stations. Sol admits the allegations contained in the second sentence of paragraph 21. Sol denies the allegations contained in the third sentence of paragraph 21.

22. Sol lacks sufficient knowledge or information to form a belief as to the veracity of the allegations contained in paragraph 22. Sol affirmatively alleges that "UT-86-1380" is not the UST number assigned to the UST's which were installed at the former service station subject of this case. To the extent the allegations may refer to the UST's installed in the former service station at issue in this case, Sol denies the allegations.

23. Sol denies the allegations contained in paragraph 23.

24. The allegations contained in paragraph 24 constitute conclusions of law which do not require a response from Sol.

25. The allegations contained in paragraph 25 constitute conclusions of law which do not require a response from Sol.

26. Sol denies the allegations contained in paragraph 26.

27. Sol denies the allegations contained in paragraph 27.

28. Sol admits that it has submitted a remediation plan which is pending approval by the Environmental Quality Board ("EQB"). Sol affirmatively alleges that UST Regulations and prior written agreements with the Plaintiffs require that the remediation plan be approved by the EQB before it is implemented. Sol denies that Plaintiffs are exposed to any potential contamination.

29. Sol denies the allegations contained in paragraph 29.

30. Sol denies the allegations contained in paragraph 30.

**As to the Second Cause of Action.**

31. Sol incorporates the admissions, denials, and allegations contained in its responses to paragraphs 1 through 30, as if realleged herein.

32. Sol denies the allegations contained in paragraph 32.

33. The allegations contained in paragraph 33 constitute conclusions of law which do not require a response from Sol.

34. The allegations contained in paragraph 34 constitute conclusions of law which do not require a response from Sol.

35. The allegations contained in paragraph 35 constitute conclusions of law which do not require a response from Sol.

36. The allegations contained in paragraph 36 constitute conclusions of law which do not require a response from Sol.

37. Sol denies the allegations contained in paragraph 37.

38. Sol denies the allegations contained in paragraph 38.

39. Sol denies the allegations contained in paragraph 39.

40. Sol denies the allegations contained in paragraph 40.

**As to the Request for Trial by Jury.**

41. Sol denies that Plaintiffs are entitled to a trial by jury.

**As to the Prayer for Relief**

42. Sol denies that Plaintiffs are entitled to the relief requested under the heading "PRAYER FOR RELIEF".

## AFFIRMATIVE DEFENSES

1. The affirmative allegations and denials stated by Sol in its answers to the specific allegations of the complaint are incorporated herein and made part of these affirmative defenses.

2. The allegations of the complaint fail to state a cause of action for which relief may be granted.

3. Sol is not an owner, operator, or generator of storage and disposal facility who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment.

4. Sol is not in violation of any permit, standard, regulation, condition, requirement, prohibition, or order contemplated by the statutes and regulations cited in the Complaint.

5. The allegations of the Complaint do not adduce sufficient cause to conclude that Sol breached its obligations under the statutes or regulations cited in the Complaint.

6. No damages have resulted from or may be attributable to any acts or omissions of Sol.

7. Assuming *in arguendo* that Sol breached some of its legal obligations, which is denied, Sol's breach was not the proximate cause of the damages claimed in the Complaint.

8. In the event any damages have occurred, which is denied, they were the result of Plaintiffs' own negligence, and/or their own acts and/or omissions, and/or by the acts and omissions of persons other than Sol, for which Sol cannot be held responsible.

9. Plaintiffs' claims are time-barred.

10. Plaintiffs' claims are barred by the doctrine of laches.

11. Plaintiffs' claims are barred by the doctrine of unclean hands.

12. Plaintiffs' claims are moot.

13. Sol has acted diligently and in good faith on the basis of the knowledge and data available during the various stages referenced in the Complaint.

14. There is no continuing or ongoing violation of UST Regulations at the site as required by RCRA for purposes of a citizen suit. Sol is in compliance with all applicable laws and regulations.

15. There is no imminent and substantial endangerment to health or the environment at the former service station as a result of the impacts which have been detected.

16. No illegal hazardous waste disposal took place at the former service station.

17. To the extent hazardous wastes may have been unintentionally discharged at the former service station, such unintended disposal was incidental to an authorized and regulated activity.

18. Currently, there is no possible source of impacts at the site that could be attributed to Sol since the station has been out of operation since July of 2001 and the UST's were removed from the former service station in March of 2004.

19. Sol is not the owner or the operator of the grease traps, septic tanks, car wash or hydraulic lift located at the former service station.

20. Sol has acted at all relevant times legally and in an appropriate and reasonable manner.

21. To the extent hazardous wastes may have been unintentionally discharged at the former service station, which is denied, natural attenuation has taken place so that such waste is no longer a threat of damage to health or the environment.

22. Given the absence of any imminent and substantial endangerment to health or the environment at the former service station, plaintiffs cannot show the existence of an injury-in-fact to a legally cognizable interest and, therefore, lack standing to pursue the claims asserted in the Complaint.

23. Plaintiffs are not entitled to an award of attorney's fees.

24. To the extent Sol may have breached any obligations under the law or regulations, which is denied, such breach does not warrant the imposition of civil penalties.

25. Plaintiffs have failed to mitigate their alleged damages.

26. Plaintiffs, as owners and/or operators of the former service station, are jointly liable for the environmental impacts and damages alleged in the Complaint.

27. Sol has at all relevant times acted under the supervision and in cooperation with the EQB, as agreed with the Plaintiffs.

28. Pursuant to agreements between the parties, Sol is not responsible for the cleanup of any environmental impacts which resulted from Plaintiffs' ownership and/or operation of the car wash, septic tanks, or mechanical workshop areas.

29. Sol reserves the right to raise any other affirmative defenses which may be legally warranted and which may arise as a result of discovery in this case.

## II. COUNTERCLAIM

COMES NOW Sol Puerto Rico Limited ("Sol"), through the undersigned attorneys, and pursuant to Fed.R.Civ.P. 13(a) respectfully counterclaims against the plaintiffs as follows:

### A. Jurisdiction

1. The Court has supplemental jurisdiction over this counterclaim pursuant to Fed.R.Civ.P. 13(a), because it arises from the same occurrence that is the subject matter of the Plaintiffs' claims and forms part of the same case or controversy.

### B. The Parties

2. Sol Puerto Rico Limited ("Sol") is a corporation organized under the laws of England and is authorized to do business in Puerto Rico. Sol is the successor of The Shell Company (Puerto Rico) Limited ("Shell") following a Stock Purchase Agreement executed on June 13, 2006 and effective on August 31, 2006.

3. Plaintiff-Counter Defendant José Chico ("Chico") is an experienced individual in the petroleum products industry and who owns and/or operated the former service station located at Road #3, Km. 29.7, in Rio Grande, Puerto Rico. On information and belief, Mr. Chico is the sole shareholder of Chico Service Station, Inc.

4. Plaintiff-Counter Defendant Chico Service Station, Inc. ("CSSI") is a corporation organized under the laws of Puerto Rico. CSSI owns and/or operated the former service station located at Road #3, Km. 29.7, in Rio Grande, Puerto Rico.

**C. The Facts**

5. On May 6, 1986, Sol registered the gasoline and diesel underground storage tanks ("UST's") which were located at the former service station owned and/or operated by the Plaintiffs. The Environmental Quality Board ("EQB") assigned number UST 02-86-1017 to the UST's. There is no record of any environmental impacts at the former service station site before the above-mentioned date and that may be attributable to Sol's UST system.

6. On April 9, 1987, Shell, now Sol, purchased the property where the former service station was located from its previous owners.

7. On that same date, April 9, 1987, Sol sold the property to CSSI. Mr. Chico appeared at the closing as the President of CSSI.

8. The transaction included the purchase of the building located at the property. The deed of sale clarified that certain equipment installed at the property (namely the UST's, dispensers, signs, and logos) was not included in the transaction and would remain the property of Sol.

9. The deed of sale further stated that CSSI acquired the property on an "as is" basis, without any representations and warranties. CSSI specifically waived any claims for hidden or apparent defects ("vicios") in the property and released Sol from any responsibility for such defects.

10. CSSI took possession of the property immediately upon the execution of the deed of sale.

11. Also on April 9, 1987, Sol and CSSI entered into a lease transaction whereby CSSI leased the property to Sol for a term of twenty (20) years. Sol leased the property for the purpose of a gasoline service station.

12. Also on April 9, 1987, Sol subleased the property and service station to Mr. Chico through a sublease agreement. Sol also designated Mr. Chico as the operator ("detallista") of the service station pursuant to an operator agreement.

13. As part of the sublease agreement and the operator agreement, Mr. Chico obligated himself to comply with all laws applicable to the service station, including all environmental laws. He also agreed that if he failed to comply with any such laws, Sol could but was not required to, comply with such laws and seek contribution from Mr. Chico.

14. Also pursuant to the sublease agreement and the operator agreement, Mr. Chico would have the express obligation of verifying daily if there were leaks or water filtration in the UST's, to ensure that any leaks were promptly discovered, to maintain regular inventory and records, and to allow Sol to inspect such records. In reference to the grease trap, Mr. Chico obligated himself to empty it and dispose of the waste products in accordance with applicable laws.

15. Pursuant to the sublease agreement and the operator agreement, Mr. Chico also obligated himself to release and hold Sol harmless of any damages to the property caused by or that resulted from the operation of the service station. Mr. Chico had a duty to inform Sol of any such damages within twenty-four (24) hours.

16. Thus, since April of 1987, Plaintiffs are the owner of the property and operator of the service station and the UST's subject of the Complaint, and had exclusive custody and possession of the property.

17. Since April of 1987, Mr. Chico is the sublessor of the property and the operator of the service station and the UST's installed therein.  Mr. Chico also operated on the property a car wash as well as a light mechanical workshop, an area for lubrication and oil change with a hydraulic lift, and a vehicle inspection center.  Mr. Chico discharged wastes and used waters generated by these additional activities in a septic tank as well as in the adjacent soil insofar as the property did not have a connection to the Puerto Rico Aqueduct and Sewers Authority's system.  Testing at the site has revealed environmental impacts near the area where Mr. Chico operated additional activities which cannot be attributed to the operation of the UST's.

18. On July 12, 1989, Sol made an inspection of the property.  A document prepared during that inspection shows that integrity tests had been performed on the gasoline and diesel UST's approximately one year and six months prior, that there had been no indication that any releases have occurred from the UST's at the site, that no neighbors of the service station had complained of gasoline odors in their residences or businesses, and that there were no physical signs of spills or overfilling.

19. On July 3, 1997, Sol renewed the operator agreement and the sublease agreement it had entered into with Mr. Chico.

20. The 1997 agreements reiterated Mr. Chico's obligation to indemnify and hold Sol harmless from any claim, complaint, loss, liability and expenses, including legal costs that Sol may incur in its defense, that may arise from damages to property or the environment or any matter related to the environment or the operation of the service station, or any other use or business authorized by Sol, unless the harm is due to the negligence of Sol or defects in Shell branded products not caused by the operator or its employees.

21. Mr. Chico further obligated himself to comply with all environmental laws and Sol's programs designed to prevent contamination of the environment.  Mr. Chico was also required to notify Sol of any suspected releases within 24 hours.

22. Following several contractual disputes between the parties related to improvements to the service station facilities, on or about July of 2001, Mr. Chico voluntarily ceased the operations of the service station. The service station has remained closed since.

23. Sol made various requests to the Plaintiffs for authorization to enter the property and remove the UST's and related appurtenances.

24. Due to plaintiffs' refusal to allow Sol to enter the property, the UST's were removed by Sol in March of 2004.

25. At all relevant times, Plaintiffs were the owner of the property and the operator of the service station and the UST's and other equipment installed therein. Plaintiffs had exclusive control and custody over the premises and were solely responsible for the daily operation of the UST's and related appurtenances, as well as other equipment thereat.

26. Testing performed at the site in relation to the removal of the UST's revealed the presence of hydrocarbon impacts in the soil and groundwater beneath the service station.

27. Thereafter, Sol conducted further testing to adequately delineate the possible environmental impacts at the site. Sol also prepared and submitted a remediation plan which is pending approval by the EQB. Moreover, pursuant to an order from the EQB and at Plaintiffs' insistence, Sol submitted a further sampling plan for MTBE and lead which is pending approval by the EQB.

28. To date, Sol has paid all the costs related to the investigation of possible impacts at the site as well as the preparation of the reports and plans designed to investigate, delineate, and address these impacts.

29. As owner and operator of the service station, plaintiffs are jointly liable for the investigation, delineation, and cleanup efforts in relation to any environmental impacts at the site of the former service station, as well as the costs incurred in such activities.

30. Moreover, pursuant to the agreements between the parties, Mr. Chico is legally obligated to release and hold Sol harmless for any claims of environmental damages which resulted from the operation of a service station at the site. The obligation includes, but is not limited to, the reimbursement of any costs incurred by Sol in the defense of these claims as well as the costs of compliance with applicable environmental laws and regulations.

**D. First Counterclaim – Breach of Contract, 31 P.R. Laws Ann. § 3052.**

31. Sol restates and incorporates the allegations contained in paragraphs 1 through 30 of this Counterclaim as if realleged herein.

32. As part of the various agreements between the parties, Mr. Chico assumed various obligations in relation to the operation and maintenance of the equipment at the site and compliance with applicable environmental laws and regulations as well as the obligations to indemnify Sol from any claims resulting from the operation of the service station. Also, Mr. Chico is solely responsible for any environmental impact resulting from, among others, the ownership and operation of a car wash, mechanical shop, and septic tanks.

33. Particularly, Mr. Chico obligated himself to comply with all laws related to the service station, including all environmental laws. He also agreed that if he failed to comply with any such laws, Sol could but was not required to, comply with such laws and seek contribution from Mr. Chico.

34. Because the environmental impacts detected at the site of the former service station occurred during the time when Plaintiffs were the owner and operator of the service station, and because he has not indemnified Sol for the investigation, delineation, and remediation efforts at the site, Mr. Chico is in breach of his obligations under the agreements between the parties.

35. Thus, Sol is entitled to specific performance of Mr. Chico's obligations under the sublease agreement and the operator agreement.

**E. Second Counterclaim – Contribution, 31 P.R. Laws Ann. § 3109.**

36. Sol restates and incorporates the allegations contained in paragraphs 1 through 35 of this Counterclaim as if realleged herein.

37. Pursuant to Article 1098 of the Puerto Rico Civil Code, when a debtor makes payment on a joint obligation, it is entitled to seek contribution from its co debtors.

38. Plaintiffs, as owner and operator of the former service station, are jointly liable for any alleged violations to UST Regulations and/or environmental impacts at the site.

39. Moreover, pursuant to the agreements between the parties, Mr. Chico obligated himself to comply with all environmental laws and, in the event Sol would have to act to bring compliance, it would have the right to seek contribution from Mr. Chico.

40. To date, Sol has paid the costs of investigation, delineation, and remediation efforts at the site. Sol is entitled to contribution from the Plaintiffs for the costs incurred in such efforts, in addition to the costs of further investigation, delineation, and remediation.

**F. Third Counterclaim – CERCLA**

41. Plaintiffs are persons under the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA").

42. Plaintiffs currently or previously owned or operated the service station subject of the Complaint.

43. The former service station and other facilities owned or operated by Plaintiffs at the site are facilities under CERCLA.

44. At various times during their ownership or operation of the former service station, Plaintiffs caused, allowed, or arranged for the release or disposal of hazardous substances into the environment at the service station.

45. Sol has conducted investigation, remediation, and response actions at the service station site under the supervision of the EQB. Sol has monitored its costs to ensure that they

were incurred to accomplish necessary and appropriate response actions. Sol accounted for these costs in a proper manner. Moreover, Sol involved key stakeholders in the development and implementation of its technically sound work plans culminating in an approvable remediation plan filed with the EQB. Accordingly, Sol has incurred necessary costs of response consistent with the National Contingency Plan to address the release or disposal of hazardous substances not related to the fuel UST operations, as well as those that may be related thereto and not attributable to Sol.

46. Plaintiffs are liable under CERCLA to Sol for all necessary costs of response incurred by Sol to address contamination unrelated to fuel UST operations at the service station site.

WHEREFORE, Sol very respectfully requests that the Court enter judgment:

(a) Dismissing the complaint with prejudice;

(b) Stating that the Plaintiffs are jointly liable for the costs of environmental investigation, delineation, and remediation at the site;

(c) Ordering the Plaintiffs to indemnify Sol;

(d) Ordering the Plaintiffs to specific performance of their obligations under the agreements between the parties;

(e) Levy costs and attorney's fees upon CSSI and Mr. Chico; and

(f) Granting such other relief as it shall deem just and proper.

WE HEREBY CERTIFY that on this same date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification electronically to all counsel of record. Notice of the same will further be served upon plaintiffs through regular mail.

Respectfully submitted.

In San Juan, Puerto Rico, this 10th day of March 2011.

          **McCONNELL VALDÉS LLC**
          *Attorneys for Sol Puerto Rico Limited*
          PO Box 364225
          San Juan, Puerto Rico 00936-4225
          Telephone: (787) 250-5636/5637
          Fax: (787) 620-8325

          By: s/ José R. González-Irizarry
          José R. González-Irizarry
          USDC-PR No. 121903
          jrgi@mcvpr.com

          By: s/ Alejandro J. Cepeda-Díaz
          Alejandro J. Cepeda-Díaz
          USDC-PR No. 222110
          ajc@mcvpr.com